



IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 2, 2017

## IN RE JA'MIYA T.

**Appeal from the Juvenile Court for Shelby County**
**No. AA1036   David S. Walker, Special Judge**

_____

## No. W2016-01433-COA-R3-PT

_____

This is a termination of parental rights case. The trial court terminated Appellant/Father's parental rights on the grounds of: (1) abandonment by willful failure to support; and (2) persistence of conditions. Because the grounds for termination of Father's parental rights are met by clear and convincing evidence, and there is also clear and convincing evidence that termination of Father's parental rights is in the best interest of the child, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and W. NEAL MCBRAYER, JJ., joined.

James Franklin, Jr., Memphis, Tennessee, for the appellant, Derrick T.

Herbert H. Slatery, III, Attorney General and Reporter, and Rachel E. Buckley, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

### I. Background

This case concerns one minor child, Ja'Miya T. (d.o.b July 2008).[1]  Derrick T.

---

[1] In termination of parental rights cases, it is the policy of this Court to remove the names of

("Father," or "Appellant") and Jennifer B. ("Mother") are Ja'Miya T.'s parents.[2] The Tennessee Department of Children's Services ("DCS," or "Appellee") first became involved with this family on October 9, 2013, when DCS received a local referral, reporting abuse of Ja'Miya T. and drug use in the home. A DCS investigator visited the home and found that the family had been evicted. DCS located Ja'Miya T., Father, Mother, and Mother's other children at a motel. Ja'Miya T. was reported to be unkempt; she was also not enrolled in school. Mother stated that the family was living in various motels. Mother also admitted to using cocaine and having several untreated mental illnesses, including bipolar disorder and schizophrenia. In a drug screen, Father tested positive for marijuana and cocaine. Father and Mother stated that they did not have stable housing or employment. Ja'Miya T. reported that Father whipped her with extension cords, and a physical examination revealed new and old bruises.

In an order entered on February 17, 2014, the Shelby County Juvenile Court ("trial court") adjudicated Ja'Miya T. dependent and neglected, finding, in relevant part, that:

> Child Protective Services investigator Julianka Jackson testified. Upon arriving at the family's residence to investigate a referral received by [DCS], Ms. Jackson found the family's household items on the street. After speaking with the property's manager, Ms. Jackson found the family at a local motel. Upon further investigation, the mother, Jennifer B[.], admitted to not having a home for the child[], admitted to the use of cocaine and marijuana, and admitted to having prior mental health issues…. At this meeting, Derrick T[.] tested positive for controlled substance use. The mother was asked but declined to take a drug test. There were also allegations of physical abuse of the child[] on the part of the father, Derrick T[.] Ms. Jackson spoke with the child[] who advised that [she] had been whipped by the father with extension cords. Ms. Jackson observed new and old marks on the child[] which were consistent with being beaten with extension cords.

> Family Services worker Tiffany Robinson testified. A Child and Family Team Meeting was conducted on October 14, 2013. At this meeting the father tested positive for cocaine and marijuana. The mother refused to take a drug test…. Ms. Robinson testified that the father is also not in compliance with the tasks listed in the Permanency Plan. The father has failed to participate in or complete an alcohol and drug assessment, a mental health assessment, domestic violence counseling, and a parenting

minor children and other parties in order to protect their identities.

[2] Mother's parental rights to Ja'Miya T. and three other children were also terminated in these proceedings. Prior to the hearing on parental termination, paternity testing revealed that Father is the natural parent of Ja'Miya T., but not Mother's other children. Mother has not appealed the termination of her parental rights.

assessment. Furthermore, the father has failed to obtain and maintain a stable source of income, obtain and maintain stable housing, and legitimate the children. Lastly, the father has only visited with the child[] one time since [she] entered [DCS] custody. Ms. Robinson testified that she had difficulty maintaining contact with the father as his phone had been disconnected.

\* \* \*

By clear and convincing evidence, the minor child[] [is] dependent and neglected within the meaning of the law pursuant to Tenn. Code Ann. 37-1-102(b)(12)(F) and 37-1-102(b)(12)(G). Based on the assessment of the family and the child[]'s circumstances, it was reasonable not to make efforts to maintain the child[] in the home due to allegations of drug exposure and physical abuse.

After working with Father for over a year, on July 28, 2015, DCS filed a petition to terminate Mother and Father's parental rights. As grounds for termination of Father's parental rights to Ja'Miya T., DCS asserted: (1) abandonment by willful failure to support; and (2) persistence of the conditions that led to the child's removal from Father's home. On May 19 and 23, 2016, the trial court heard the petition to terminate Father's parental rights. On June 16, 2016, the trial court entered an order terminating Father's parental rights to Ja'Miya T. on the grounds of abandonment by willful failure to support, persistent conditions, and on its finding that termination of Appellant's parental rights is in the child's best interest. Appellant appeals.

## II. Issues

In his brief, Appellant raises three issues for review:

1.  Whether DCS presented clear and convincing evidence in regard to failure to support?

2.  Whether DCS made reasonable efforts in regard to the ground of persistence of conditions?

3.  Whether it is reversible error for Special Judge Walker to sit as a substitute [j]udge, though the procedures set forth in Tennessee Code Annotated Section 17-2-118 have not been followed?

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a

fundamental right to the care, custody, and control of his or her child. ***Stanley v. Illinois***, 405 U.S. 645, 651 (1972); ***Nash-Putnam v. McCloud***, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. ***Nash-Putnam***, 921 S.W.2d at 174-75 (citing ***Santosky v. Kramer***, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." ***In re W.B.***, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at \*7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); ***In re D.L.B.***, 118 S.W.3d 360, 367 (Tenn. 2003); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. ***Santosky***, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); ***In re Valentine***, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable ... and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." ***In re M.J.B.***, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. July 12, 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." ***Id.*** at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002). Furthermore, when the resolution of an issue in a case depends on the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witness and his or her manner and demeanor while testifying, is in a far better position than this Court to decide those issues. ***McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See* ***Whitaker***, 957 S.W.2d at 837; *see also* ***Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the

contrary.  *See **Humphrey v. David Witherspoon, Inc.***, 734 S.W.2d 315, 315-16 (Tenn. 1987); ***Bingham v. Dyersburg Fabrics Co., Inc.***, 567 S.W.2d 169, 170 (Tenn. 1978); ***Wells v. Tenn. Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999).

## IV.  Authority of the Trial Court

In his third issue, Appellant alleges that Special Judge Walker was not properly appointed as a substitute judge, pursuant to Tennessee Code Annotated Section 17-2-118, so as to have authority to terminate Appellant's parental rights.  From our review of the record, Appellant failed to raise this issue or object in the trial court.  In fact, the trial court's order specifically states that, "No party objected to the Special Judge presiding over this matter."  "[T]he issue of whether a magistrate has been properly appointed to serve as a special judge in juvenile court has been thoroughly litigated and has never been deemed to constitute an issue of subject matter jurisdiction" and, therefore, may not be raised for the first time on appeal.  ***In re Marcell W.***, No. W2014-02120-COA-R3-CV, 2015 WL 4396261, at *9 (Tenn. Ct. App. July 16, 2015); *see also **State Dept. of Children's Servs. v. A.M.H.***, 198 S.W.3d 757, 764 (Tenn. Ct. App. 2006) (declining to consider appellant's argument concerning a special judge's authority because "issues not raised at trial generally will not be considered for the first time on appeal.").  Because the special judge issue does not raise a question concerning subject matter jurisdiction, the issue cannot be raised for the first time on appeal.  Tenn. R. App. P. 13(b).  Accordingly, Appellant's argument that Special Judge Walker lacked the authority to preside over the proceeding for termination of parental rights is waived.

## V.  Grounds for Termination of Parental Rights

As noted above, the trial court relied on two statutory grounds in terminating Appellant's parental rights: (1) abandonment by willful failure to pay support; and (2) persistence of conditions.  *See* Tenn. Code Ann. §§ 36-1-102(1)(A)(i); 36-1-113(g)(1), (3).  The Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases."  ***In re Angela E.***, 303 S.W.3d 240, 251 n.14 (Tenn. 2010).  Accordingly, we will review both grounds.

### A.  Abandonment

The trial court found, by clear and convincing evidence, that Father's parental rights should be terminated on the ground of abandonment by willful failure to pay support pursuant to Tennessee Code Annotated Section 36-1-113(g)(1) and Tennessee Code Annotated Section 36-1-102(1)(A)(i).  In pertinent part, Tennessee Code Annotated Section 36-1-113(g) provides:

(g)   Initiation of termination of parental or guardianship rights may be

- 5 -

based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated Section 36-1-102 defines "abandonment," in relevant part as follows:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians… have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). As found by the trial court, the relevant, four-month time period in this case is March 28, 2015 until July 27, 2015.

In *In re Audrey S.*, this Court discussed willfulness in the context of termination of parental rights cases:

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months . . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing . . . .

The willfulness of particular conduct depends upon the actor's

- 6 -

intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted).

For purposes of Tennessee Code Annotated Section 36-1-102(1)(A)(i), "token support" means that the support, under the circumstances of an individual case, is not significant considering the parent's means. Tenn. Code Ann. § 36-1-102(1)(B). This Court has held that failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)).

In its order terminating Father's parental rights, the trial court made the following, relevant findings concerning the ground of abandonment by willful failure to support:

11. Pursuant to T.C.A. § 36-1-113(g)(1) and as defined by T.C.A. § 36-1-102(1)(A)(i), Respondent[] [] Derrick [] T[.] ha[s] abandoned… [Ja'Miya T.] in that, for a period of four (4) consecutive months immediately preceding the filing of the Petition for Termination of Parental Rights, [he] willfully failed to make any contribution whatsoever toward the support of the child[], despite being able-bodied and capable of being employed. The Department filed the petition on July 28, 2015, and [the] parent[] failed to support the child[] in the four months prior to the date the petition was filed, which was from March 28, 2015 to July 27, 2015. Family Service Worker Tiffany Robinson testified that the parent[] [has] not contributed to the support of the child[] since [she] entered foster care.

* * *

13. Pursuant to T.C.A. 37-2-403(a)(2)(B), Ms. Robinson advised Mr. T[.] on November 5, 2013; June 11, 2014; and September 19, 2014 that willful failure to visit or contribute to the support of the child[] was a ground for termination of parental rights. The Department provided Mr. T[.] with its Criteria and Procedures for Termination of Parental Rights form on all three dates and explained the form each time. Mr. T[.] signed the Criteria form on November 5, 2013 and again on June 11, 2014, and he refused to sign the Criteria form on September 19, 2014, which was documented by Ms. Robinson. Mr. T[.] also signed the permanency plan on October 22,

- 7 -

2014 which states that he is required to provide support for the child[]. According to Mr. T[.], he bought the child[] clothes at one point, but the foster parent threw the clothes away so he did not send any more clothing. Mr. T[.] did not tell Ms. Robinson about the foster parent's actions. Mr. T[.] also reported that the Internal Revenue Service ("IRS") confiscated his tax refund to pay back child support, but he did not have proof with him at court. Mr. T[.] testified that he currently works full-time at Nike on Shelby Drive, and he works eight hours a day, five days a week, making $9.00 an hour. Mr. T[.] testified that he takes home about $360.00 a week. Mr. T[.] reports his expenses are a monthly $62.00 cable bill; $150.00 to $300.00 utility bill; and miscellaneous household supplies. Mr. T[.] also pays half the rent for himself and Ms. B[.] Mr. T[.] stated he currently had the ability to pay up to $200.00 a month in child support for Ja'Miya. Previously, Mr. T[.] worked doing "under the table" jobs for which he was paid cash, and he also worked for a temporary agency and also at Nike on Winchester Road. Mr. T[.] testified that he bought the children treats at visits…

The record contains no evidence that Father made any child support payments. Despite the lack of evidence, he testified, without providing receipts or confirmation, that his tax return had been applied towards child support, as follows:

Q.    Have you paid any child support to the child support office?

A.    No. I just started receiving letters, but I do allow them to take my income tax this year.

\* \* \*

Q.    Mr. T[.], do you have any receipts from the IRS in regards to the tax returns that you paid your child support from?

A.    I'm waiting on them now.

In its order terminating Appellant's parental rights, the trial court made a credibility finding, stating that "Mr. T[.] is not a credible witness." As set out above, a credibility finding by the trier of fact is given great weight by this Court. *See Whitaker*, 957 S.W.2d at 837; *McCaleb*, 910 S.W.2d at 415; *Walton*, 950 S.W.2d at 959. Assuming, *arguendo*, that the foregoing testimony is material, our review focuses on Father's payment of child support during the four months preceding the filing of the petition for termination of parental rights, i.e., from March 28, 2015 until July 27, 2015. Accordingly, even if we take Father's testimony as true, his payment of a tax return in 2016, the year of the hearing on the petition to terminate his parental rights, would be not a payment within the relevant four-month period. This Court has stated that a last-minute child support

payment outside of the relevant period is "not so much genuine child support as it [is] a bid for self-preservation." *In re Jacob C. H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014).

Regarding his income during the relevant four month period, Father testified as follows:

Q.    And you also testified that you are currently working at Nike?

A.    Yes.

Q.    And when did you start working there?

A.    I started December 2015.

Q.    Okay. And prior to that, where did you work?

A.    I was working at Staff Solution. It's right there about where my house is, where I live now.

Q.    Okay. And approximately how long did you work there?

A.    Well, I worked there it was a little under a month.

Q.    A month. Okay. But prior to the temp service and Nike, you were not able to find employment?

A.    Oh. I had worked at Benihana. I worked at the other Nike on Winchester.

* * *

Q.    Now, since the child[] [has] been in custody were you working at Benihana's or this was before [she] came into custody?

A.    That was after [she] came into custody.

Q.    Okay. Now, as far as the income you earn from these different places –

A.    No. Wait. That was after [she] came into my custody, the first job I worked was the Nike on Winchester, then Benihana's.

- 9 -

Q.      Okay. Now, as far as the income you earned there, did you have the ability to support the child[]?

A.      Yes.

When questioned by the trial court, Father explained that he had additional "under-the-table work" during the relevant time period:

THE COURT: You said earlier that you were at one time doing under-the-table work. What did you mean when you said that, sir?

A.      When people pay you out of their pocket instead of with a check. It was during the time when the kids first came into custody.

THE COURT: So, you were receiving income at that time, but you were getting paid in cash; is that right?

A.      Yes.

Father contends that DCS failed to meet its burden to show that Father had the ability to pay child support during the relevant four-month period. In support of his arguments, Father relies on the case of *In re Envy J.*, in which this Court declined to uphold the trial court's finding of the parent's failure to support, concluding that the record was insufficient to show that the parent willfully failed to support the children. *In re Envy J.*, No. W2015-01197-COA-R3-PT, 2016 WL 5266668, at *14 (Tenn. Ct. App. Sept. 22, 2016). In *In re Envy J.*, the parent did not testify, and DCS' only proof regarding the parent's income was the testimony of the DCS case manager. *Id.* Unlike *In re Envy J.*, here, Father testified regarding his work history and, by his own admission, stated that he "ha[d] the ability to support" during the relevant four-month period.

Father also argues that he could not pay child support because he did not know how to send the payments. We find this argument unpersuasive because the permanency plan provided Father with the address. Father contends that he provided support to Ja'Miya T. by: (1) buying clothes that he kept in his possession; (2) giving Ja'Miya T. one dollar at visits; and (3) buying ice cream and cookies during visits. Given Father's testimony regarding his employment during the relevant period, we conclude that these payments were merely token. Furthermore, Father has provided no proof, e.g., receipts, to support his testimony, and the foster parent contradicted Father, testifying that Father never provided clothes or bought treats at visits. From our review, we conclude that the evidence does not preponderate against the trial court's findings that Father had the ability to provide support, but chose not to. Accordingly, there is clear and convincing evidence to support the trial court's termination of Father's parental rights on the ground of abandonment by willful failure to support.

- 10 -

## B. Persistence of Conditions

Tennessee Code Annotated Section 36-1-113(g)(3) provides that termination of parental rights may be based on persistence of conditions:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Arteria H.*, 326 S.W.3d at 178.

In *In re Audrey S.*, 182 S.W.3d at 872, this Court held that based upon the statutory text and its historical development, the ground of persistence of conditions found in Tennessee Code Annotated Section 36-1-113(g)(3) provides a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse. As set out in the juvenile court's January 16, 2014 order, *supra*, the finding of dependency and neglect in this case was based on the family's homelessness, drug use in the home, alleged abuse by Father, and instability created by Mother's untreated mental health issues.

In its order terminating Father's parental rights, the trial court specifically found that DCS had proven, by clear and convincing evidence, that Father failed to remedy the conditions that led to Ja'Miya T.'s removal from his custody:

14. Pursuant to T.C.A. § 36-1-113(g)(3),… Ja'Miya [] T[.]… ha[s] been in the custody of [DCS] for more than six (6) months preceding the filing of

- 11 -

this petition, and the conditions which led to removal still persist and other conditions exist which in all probability would cause the child[] to be subjected to further abuse and neglect and which, therefore, prevent the child[]'s safe return to the care of… Derrick [] T[.] Further, there is little likelihood that these conditions will be remedied at an early date so that the child[] can be safely returned to [Father] in the near future; the continuation of the legal parent and child relationship greatly diminishes the child[]'s chances of early integration into a safe, stable, and permanent home; and continuation of the legal parent and child relationship is not in the child[]'s best interest. [Father] ha[s] not made such a lasting adjustment as to enable the child[] to be returned to [him] safely.

15. The Department made reasonable efforts to assist the parent[] in remedying the conditions that necessitate foster care by providing services, transportation assistance, and visitation with the child[]. Ms. B[.] and Mr. T[.] reside together after acquiring housing in March 2015…. Ms. B[.] provided the Court with proof she renewed her lease on March 27, 2016. Mr. T[.] stated he was at work when Ms. B[.] signed the lease so he is not named as an occupant, but the landlord is aware that he resides there. Both testified that they have been together for thirteen years and they have no plans to separate. (See Exhibit 12, Lease for Ms. B[.])

\* \* \*

17. . . . Mr. T[.] testified that he does not believe Ms. B[.] has mental health issues.

18. [Father's] visitation with the children is not consistent. Ms. Robinson testified that she explained this requirement in depth to… Mr. T[.] The parent[] [has] not been consistent in visiting the child[] since [she] [was] placed in the current foster home…. [Foster parent] testified that the child[] [has] seen the parent[] three or four times since the child[] [was] placed in her home in July 2015. [Father] maintain[s] [that his] last visit with the child[] was in March 2016 at a Burger King, but [foster parent] testified the last visit was either January or February 2016, and the March 2016 visit was a no[]-show. Mr. T[.] stated no visit occurred in April 2016 because the foster parent had to go out of town. Mr. T[.] testified that he buys the child[] treats at visits because the foster parent will report [she] [has] already eaten dinner. [Foster parent] testified [that Father] do[es] not buy the child[] food at visits.

19. Ms. Robinson testified that she has additional concerns with the parent[']s[] care of the child[], specifically with the need for follow-up for

[Ja'Miya T.'s] mental health treatment for Attention Deficit/Hyperactivity Disorder ("ADHD") and need for continued compliance with the Individualized Education Plans ("IEPs") for [her] education. [Ja'Miya T.] [was] school-aged when [she] entered foster care, and [she] [was] not enrolled in school. According to Ms. B[.], the family had moved and she was unable to get them re-enrolled as soon as they moved. Mr. T[.] testified that he tried to get the children into school but had not been successful at the time [DCS] became involved, but the child[] had been out of school for a short period of time.

The trial court also found that Mother's untreated drug and mental health issues were problematic, but found that Father was steadfast in his plan to remain in the same home with Mother. Because Father continues to live with Mother, we must consider the conditions and safety of the household as a whole, which inquiry implicates Mother's mental health diagnoses and drug addiction. The record shows that Mother failed to comply with DCS' requests for drug testing after she attended a drug rehabilitation program. Mother also testified that she has no plans to participate in any sobriety program. Father testified that Mother's drug use around Ja'Miya T. remains a "concern" for him, and he is "concerned" about Mother's capability to sustain her sobriety. Nonetheless, Father stated that Mother's assurance that "[s]he said she is not going to do drugs" was sufficient to support his decision to stay in the same household.

Dr. LaShaunda P. Massey, the psychologist who evaluated Mother, testified that Mother has schizoaffective disorder and mild mental retardation, which require psychological treatment and case management. Notwithstanding a learning disability, Mother and Father both testified that Mother does not have any mental illness. Mother stated that, pursuant to DCS' request, she visited a facility, and a doctor told her that she did not need treatment. No evidence of this recommendation is contained in the record. Additionally, DCS requested that Father have a psychological evaluation, which he failed to do.

Following a permanency plan hearing, on November 16, 2015, the court entered an order stating, in relevant part, that

father is in substantial compliance with the permanency plan in that he has participated in a parenting assessment, an [alcohol and drug] program, domestic violence classes, was visiting [the child], and has housing and income. Father also completed a psychological evaluation; however, [DCS] has not heard from him since May[] 2015.

Relying on the November 16, 2015 order, Father now argues that his compliance with the permanency plan is proof that the conditions that led to the child's removal have also been remedied. We disagree. Although the permanency plan, by its nature, addresses the

- 13 -

concerns that bar a parent from reunification with the child, persistence of conditions and substantial compliance with the permanency plan are two separate grounds for termination of parental rights. Therefore, apparent satisfaction of the requirements of the permanency plan does not, *ipso facto*, render the ground of persistence of conditions inapplicable. Tenn. Code Ann. § 36-1-113(g)(3). Furthermore, in its November 16, 2015 order, the court acknowledged Father's present compliance with the permanency plan, but went further to express remaining concern with unaddressed issues: "Progress toward resolving the reasons the child[] [is] in foster care has been made, but… services need to be completed." Moreover, the court specifically noted the fact that DCS had not "heard from [Father] since May[] 2015." In short, the record indicates that the conditions that led to removal persist, specifically, Father's insistence on remaining in the home with Mother despite her untreated drug addiction and unaddressed mental health issues. Father's complacency in this regard indicates too high a risk that the child would be further exposed to neglect and abuse if placed in a household where these issues persist.

Father further argues that the trial court erred in finding that DCS made reasonable efforts to assist him. In the absence of such reasonable efforts, Father contends that the trial court cannot terminate his parental rights on the persistence of conditions ground. Under the Tennessee Supreme Court's holding in ***In re Kaliyah S.***, Father's argument is without merit. ***In re Kaliyah S.***, 455 S.W.3d 533 (Tenn. 2015). In ***Kaliyah***, the Tennessee Supreme Court stated: "[W]e hold that, in a termination proceeding, the extent of the efforts made by [DCS] is weighed in the court's best-interest analysis, but [DCS] need not prove that it made reasonable efforts as an essential component of its petition to terminate parental rights." ***Id.*** at 535. Accordingly, "proof of reasonable efforts is not a precondition to termination of parental rights of a respondent parent" on the grounds of persistence of conditions. ***Id.*** at 555. However, the trial court may consider reasonable efforts in its best interest analysis. ***Id.*** Therefore, we will address the trial court's findings on reasonable efforts in the best interest section below.

As to the ground of persistence of conditions, from the totality of the circumstances and for the reasons discussed above, we conclude that there is clear and convincing evidence to support the trial court's termination of Father's parental rights on the ground of persistence of the conditions that led to the child's removal.

## VI. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. ***White v. Moody***, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. ***In re Audrey S.***, 182 S.W.3d at 877. The focus shifts to the child's best interest. ***Id.*** at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental

- 14 -

rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id.* However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to the instant case, these factors include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

\* \* \*

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parents or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to §

36-5-101.

Tenn. Code Ann. §§ 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. §§ 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*Moody*, 171 S.W.3d at 194.

In its order terminating Appellant's parental rights, the trial court made the following findings concerning Ja'Miya T.'s best interest:

> a. Pursuant to T.C.A. § 36-1-113(i)(1), Mr. T[.] has not made an adjustment of circumstance, conduct, or condition as to make it safe and in the child's best interest to be in his home. He and Ms. B[.] live together, and the mother's drug addiction has not been adequately addressed, nor is her mental health being treated. The parents have no plan to separate at this time.

> b. Pursuant to T.C.A. § 36-1-113(i)(2), Mr. T[.] has had no recent contact with [DCS] and has failed to effect a lasting adjustment after reasonable efforts by [DCS] to contact him to the extent that lasting adjustment does not reasonably appear possible. Mr. T[.] cut off contact with Ms. Robinson in summer 2015, and Ms. B[.] cut off most contact with Ms. Robinson in December 2015. Ms. B[.] has refused reasonable requests for hair follicle drug screens.

> c. Pursuant to T.C.A. § 36-1-113(i)(3), Mr. T[.] has had no recent visitation with Ja'Miya. The Court credits the Family Service Worker and foster parent's testimony that [Father's] last visit was in January or February 2016 and not March 2016. [Father] [has] not had recent visitation, and [his] visitation has been sporadic for the past year. The foster parent reported

- 16 -

[Father] [has] visited three or four times since the child[] [was] placed in her home in July 2016. [Father] [was] often late to the visits [that he] did attend.

d. Pursuant to T.C.A. § 36-1-113(i)(4), Mr. T[.] has a meaningful relationship with the child.

e. Pursuant to T.C.A. § 36-1-113(i)(5), a change of caretakers and physical environment would have a negative effect on the child's emotional, psychological, and medical condition. [Ja'Miya T.] [has] [an] IEP[] and special needs that the foster parent is addressing at this time.

f. Pursuant to T.C.A. § 36-1-113(i)(6), Mr. T[.] has shown brutality toward the child[]. The Court found Mr. T[.] physically abused the child[] by whipping [her] with extension cords in the findings from January 16, 2014 at the adjudication hearing. Both Mr. T[.] and Ms. B[.] deny that any physical abuse occurred in the home.

g. Pursuant to T.C.A. § 36-1-113(i)(7), there is arguably criminal activity in Mr. T[.]'s home, as [DCS] has been unable to verify that Ms. B[.] is no longer using cocaine.

h. Pursuant to T.C.A. § 36-1-113(i)(8), Mr. T[.]'s mental and emotional status would be detrimental to the child and prevent him from providing safe and stable care and supervision for the child. Mr. T[.] is concerned about Ms. B[.]'s sobriety, but he denies she has any mental health problems.

i. Pursuant to T.C.A. § 36-1-113(i)(9), Mr. T[.] has paid no child support for the child in accordance with the child support guidelines. Mr. T[.] testified that the IRS seized his income tax returns, which the court finds is an involuntary seizure and not voluntary payment of child support.

Concerning the first factor, i.e., whether the parent has made an adjustment of conditions to make it safe and in the child's best interest to be in the parent's home, Father testified that he intends to continue living with Mother, despite his concerns about Mother's drug use. Furthermore, despite medical diagnosis, Father denies that Mother has any mental health problems. Regarding the second factor, the trial court found that DCS made reasonable efforts to assist Father, as follows:

[t]he Department made reasonable efforts to assist the parents in remedying the conditions that necessitate foster care by providing services, transportation assistance, and visitation with the children.

The record supports the trial court's finding. From our review, DCS provided the following services to Father: (1) drug and alcohol counseling; (2) psychological evaluations; and (3) bus passes. The trial court also found that DCS made numerous attempts to maintain contact with Father, even after he stopped communicating with DCS. Specifically, the court found that:

> [DCS case manager] Ms. Robinson testified that Mr. T[.] has not been in contact with her in some time, and the Court finds that Mr. T[.] stopped communicating with [DCS] around the time the DNA testing results on [Mother's Children] were returned excluding him as the father of those children.

Given the services DCS provided and the fact that, for a long period of time, Father was not in communication with DCS, we conclude that DCS' efforts to assist Father exceeded Father's efforts in this case. Tenn. Code Ann. § 36-1-102(1)(A)(ii) (stating that DCS' efforts "may be found to be reasonable if such efforts exceed the efforts of the parent…").

Despite DCS' efforts, as discussed above, drug use and mental health issues in the home remain unaddressed, and we cannot conclude that return to that environment would be in Ja'Miya T.'s best interest. This is especially so in light of the fact that Mother will likely be left alone with Ja'Miya T. when Father leaves the home. By insisting on remaining with Mother, Father is not able to provide a safe and stable home. In this regard, Father has "failed to effect a lasting adjustment after reasonable efforts by social services agencies for such duration of time that lasting adjustment does not reasonably appear possible."

In addition, the record indicates that Father has had only sporadic visitation and contact with Ja'Miya T. The foster parent and the DCS case manager testified that Father's last visit was in January 2016. Accordingly, there is no indication that Ja'Miya T. has any meaningful relationship with Father. Conversely, Ja'Miya T.'s foster parent testified that Ja'Miya T. has adjusted well in her new home. She now receives therapy, medication, and individualized education to address her special needs. Given Ja'Miya T.'s need for stability and individualized education, removal from her current home would likely cause mental and emotional distress. Accordingly, we conclude that the facts, as found by the trial court, are supported by the preponderance of the evidence and clearly and convincingly establish that termination of Appellant's parental rights is Ja'Miya T.'s best interest.

## VII. Conclusion

For the foregoing reasons, we affirm the order of the trial court terminating

Appellant's parental rights.  The case is remanded for such further proceedings as may be necessary and are consistent with this opinion.  Costs of the appeal are assessed to the Appellant, Derrick T.  Because Appellant is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

 

_____
KENNY ARMSTRONG, JUDGE